UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

AQUARIUS W.,

        Plaintiff,

     v.                                                **DECISION AND ORDER**

                                                                   19-CV-1462S

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.
_____

       1.     Plaintiff Aquarius W.[1] brings this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security that denied her application for supplemental security income benefits under Title XVI of the Act.  (Docket No. 1.)  This Court has jurisdiction over this action under 42 U.S.C. § 405(g).

       2.     Plaintiff protectively filed her application with the Social Security Administration on May 26, 2016.  Plaintiff initially alleged disability beginning January 1, 2016, later amended back to November 2, 2013, due to learning disorder and spine disorder.  Plaintiff's application was denied, and she thereafter requested a hearing before an administrative law judge ("ALJ").

       3.     On July 9, 2018, ALJ Benjamin Chaykin held a hearing at which Plaintiff—represented by counsel—and Vocational Expert Cyndee Burnett appeared and testified.

---

[1] In accordance with this Court's Standing Order of November 18, 2020, and consistent with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, this Decision and Order will identify Plaintiff by first name and last initial.

(R.[2] at 16, 32-72.)  At the time of the hearing, Plaintiff was 23 years old when she applied and had a limited education (R. at 24), which Defendant notes was a ninth-grade education with special education assistance (Docket No. 11, Def. Memo. at 2, 19; R. at 43), and was able to communicate in English (R. at 24).  Plaintiff argues that she is illiterate and the ALJ failed to acknowledge this (Docket No. 8, Pl. Memo. at 20-22).

4. Plaintiff had no past relevant work (R. at 24) and no substantial gainful activity since her May 2016 application (R. at 18).  She stopped working in January 2011 due to pregnancy (R. at 44, 196; Docket No. 11, Def. Memo. at 2).

5. The ALJ considered the case *de novo* and, on September 24, 2018, issued a written decision denying Plaintiff's applications for benefits.  After the Appeals Council denied Plaintiff's request to review the ALJ's decision, she filed the current action, challenging the Commissioner's final decision.[3]  (Docket No. 1.)

6. Both parties moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure.  (Docket Nos. 8, 11.)  Plaintiff filed a response on July 13, 2020 (Docket No. 14), at which time this Court took the motions under advisement without oral argument.  For the reasons that follow, Plaintiff's motion is **granted**, and Defendant's motion is **denied**.

7. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there

---

[2]Citations to the underlying administrative record are designated as "R."

[3]The ALJ's September 24, 2018, decision became the Commissioner's final decision on this matter when the Appeals Council denied Plaintiff's request for review.

has been a legal error.  See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).  Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 389, 91 S.Ct. 1420, 26 L.Ed.2d 842 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

8.   "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  Williams *ex rel.* Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review."  Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

9.   The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act.  See 20 C.F.R. § 416.920.  The Supreme Court of the United States recognized the validity of this

analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing whether a claimant is disabled.  482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987).

10. The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If [s]he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits [her] physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider [her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, [s]he has the residual functional capacity to perform [her] past work.  Finally, if the claimant is unable to perform [her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also 20 C.F.R. § 404.1520; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

11. Although the claimant has the burden of proof on the first four steps, the Commissioner has the burden of proof on the fifth and final step.  See Yuckert, supra, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984).  The final step is divided into two parts.  First, the Commissioner must assess the claimant's job qualifications by considering her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform.  See 42 U.S.C.

4

§ 423(d)(2)(A); 20 C.F.R. § 416.920(f); see also Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

12. The ALJ analyzed Plaintiff's claim for benefits under the process set forth above. At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since May 26, 2016, her application date. (R. at 18.) Plaintiff testified that she became disabled in November 2013 due to an automobile accident (R. at 39-41, 45-61, 196; Docket No. 11, Def. Memo. at 2).

13. At step two, the ALJ found that Plaintiff has the following severe impairments: learning disorder and spine disorder. (R. at 18.) The ALJ concluded, however, that Plaintiff's knee and shoulder injuries were not severe because they were expected to cause minimal work-related limitations lasting for at least twelve consecutive months. The ALJ found that those impairments were acute and successfully treated in the short term. (id.). At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any impairment(s) listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Id.

14. Next, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform light work, except occasional climbing or ropes, scaffolds, or ladders; occasional climbing of ramps or stairs; occasional stooping, crouching, balancing, kneeling, or crawling; frequent reaching; frequent pushing and pulling with bilateral upper extremities; and limited to performing simple tasks (R. at 20).

15. At step four, the ALJ found Plaintiff had no past relevant work. (R. at 24.) At step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (R. at 24-25.) The ALJ posed hypotheticals

to the vocational expert who opined that a claimant like Plaintiff in age, education, and employment experience, could perform such occupations as Marker, Housekeeper, or Cafeteria Worker (all light exertion work) (R. at 25). Accordingly, the ALJ found that Plaintiff is not disabled. (Id.)

      16.    Plaintiff argues that the RFC determination is not supported by substantial evidence because Plaintiff could not perform sedentary work much less light work (Docket No. 8, Pl. Memo. at 16-20). She claims the ALJ did not acknowledge her illiteracy and failed to develop the record on her ability to read and write (id. at 20-22). Next, Plaintiff claims that the frequency of her medical treatment renders her unable to maintain a minimal standard of attendance at work (id. at 22-23). For the reasons that follow, this argument (especially the consideration of her claimed severe impairments for her knees and shoulders) is accepted.

      17.    First, Plaintiff claims she cannot perform sedentary work (id. at 16-20). Plaintiff had a motor vehicle accident in 2013 and ever since she suffered constant pain in her knees, shoulders, neck, with pain radiating down her legs (id. at 18; R. at 49-53). She testified that she required a stool to wash dishes because she could not stand for long periods of time while performing that chore (R. at 61-62; Docket No. 8, Pl. Memo. at 18). Plaintiff explained that she engaged in conservative treatment (which the ALJ determined rendered her limitations not severe, R. at 18) due to limitation in her insurance coverage and her youth precluded a recommendation for corrective surgery at that time (Docket No. 8, Pl. Memo. at 18; R. at 52, 552, 632, 45-46). The ALJ found, however, that her knee and shoulder impairments were acute and successfully treated or were not symptomatic during the relevant period (R. at 18).

6

18. As for impairments consideration at Step Two, Plaintiff bears the burden of establishing that she has a severe impairment, "which is 'any impairment or combination of impairments which significantly limits [the claimant's] ability to do basic work,'" Miller v. Berryhill, No. 16CV6467, 2017 U.S. Dist. LEXIS 153578, at *20 (W.D.N.Y. Sept. 20, 2017) (Telesca, J.); see 20 C.F.R. § 416.920(c). An impairment or combination of impairments are found to be "not severe" when medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work, SSR 85-28, 1985 SSR LEXIS 19 (1985). In this Circuit, this Step Two severity analysis "may do no more than screen out de minimis claims," Dixon v. Shalala, 54 F.3d 1019, 1030 (2d Cir. 1995). Despite this level of screening at Step Two, Plaintiff still has the burden to show that the impairments or combination of impairments significantly limited his or her ability to perform work.

19. The ALJ erred in finding that Plaintiff's knee and shoulder injuries were not severe impairments and in not considering these impairments with impairments deemed to be severe in later steps of the analysis. As noted below, Plaintiff's medical opinions found that she could not perform light work due to her knee and shoulder injuries, despite noting her normal gait. Given the de minimis level of proof Plaintiff needed at Step Two, declaring her impairments were not severe was in error. This error is compounded by the ALJ not including these impairments (even if deemed nonsevere) in hypotheticals to the vocational expert and the determination of disability by Step Five.

20. She also faulted the ALJ for giving less weight to the opinions of treating and consultative and independent medical examiners (Docket No. 8, Pl. Memo. at 17),

which Plaintiff concludes led to the ALJ made findings based upon his review of the medical evidence alone (id. at 19).

22. The ALJ properly discounted the ultimate finding in the opinion of treating orthopedists Drs. Graham Huckell and A. Marc Tetro (R. at 23). These doctors found Plaintiff was temporarily disabled due to her accident in March to May 2014 (R. at 592, 601, 606, 618). These opinions may not suffice to establish Plaintiff's disability during the entirety of the relevant period.

22. The ALJ noted reports of Plaintiff's "largely normal gait" discussed in her examinations as the reason for giving diminished weight to the medical opinions where they differed from the RFC (R. at 23-24). Only Robert DeTamble, Licensed Massage Therapist, found that Plaintiff was limited to a slowed gait (R. at 745). Under the pre-March 2017 rules, a massage therapist was not an acceptable medical source (R. at 24), 20 C.F.R. § 416.927(f). DeTamble's records, however, presented massage sessions and areas treated without any observations of Plaintiff to substantiate the appearance of her gait during massage sessions (R. at 708-36).

23. These medical opinions, however, consistently found Plaintiff was unable to perform light exertion work or elements for light work (R. at 592, 601, 606, 615, 618, 567, 701, 745, 740-42).

24. On remand, these opinions should be reconsidered factoring Plaintiff's knee and shoulder impairments.

25. Next, Plaintiff faults the ALJ for not recognizing her illiteracy (Docket No. 8, Pl. Memo. at 20-22), later stating in her Reply that the ALJ did not find the reasons for upholding his literacy findings from her special education record that Defendant now

argues as post hoc rationalizations to support the ALJ's findings (Docket No. 14, Pl. Reply Memo. at 3-4).

26. Plaintiff completed the ninth grade, struggling to read most words, and reading at a second-grade level. Plaintiff was unable to earn a GED after attempting two or three times. (Docket No. 8, Pl. Memo. at 21; R. at 43, 46-48.) While in school, Plaintiff had testing accommodation of having her test read to her twice (Docket No. 8, Pl. Memo. at 21; R. at 333). She denied in her disability report that she could read or write (Docket No. 8, Pl. Memo. at 21; R. at 195).

27. Plaintiff now argues that if she were found illiterate, the record lacked substantial evidence that an illiterate individual could perform the occupations found by the vocational expert and the ALJ did not raise her literacy as a consideration for the vocational expert (Docket No. 14, Pl. Reply Memo. at 4-5; cf. R. at 67-70).

28. Under Social Security regulations, one's literacy is a factor to determine whether the claimant could perform work. These regulations established four educational categories: illiteracy, marginal education, limited education (found by the ALJ for Plaintiff, R. at 24), and high school education or above. Delacruz v. Astrue, No. 10 Civ. 5749, 2011 WL 6425109, at *24 (S.D.N.Y. Dec. 1, 2011) (Dolinger, Mag. J.) (Report & Recommendation) (Docket No. 14, Pl. Reply Memo. at 2), adopted, 2011 WL 6425101 (S.D.N.Y. Dec. 21, 2011); see 20 C.F.R. § 404.1564(b).

29. Illiteracy under that regulation means the inability to read or write, if that person cannot read or write a simple message such as instructions or an inventory list and generally that an illiterate person "had had little or no formal schooling," 20 C.F.R. § 404.1564(b)(1), while limited education means "the ability in reasoning, arithmetic, and

9

language skills but not enough to allow a person with these educational qualifications to do most of the more complex job duties needed in semi-skilled or skilled jobs. We generally consider that a 7th grade through 11th grade level of formal education is a limited education," id. § 404.1564(b)(3).

30.     Although Plaintiff completed the 9th grade (R. at 24) and on that basis was considered having a "limited education" or more formal education as is presumed someone who is illiterate, she argues that she read below grade level and was unable to read multi syllable words, thus was illiterate (Docket No. 8, Pl. Memo. at 20-22).

31.     The ALJ only presented a hypothetical where the claimant had the same education as Plaintiff (R. at 67) without detailing to the vocational expert that education.

32.     On remand, the ALJ should reconsider his finding that Plaintiff had a limited education. Following that redetermination, the ALJ should pose details about Plaintiff's education to the vocational expert in determining what occupations a hypothetical claimant truly like her could perform.

33.     Finally, Plaintiff argues here absences for medical treatment would preclude full time attendance required for any work (Docket No. 8, Pl. Memo. at 23). She points out that of the period of 57 months (or 439 workdays) from November 2, 2013, to the date of the hearing on July 9, 2018, Plaintiff underwent treatment for a total of 245 days, or 4.3 days per month by her calculation (id.). This would be twice the amount of absenteeism the vocational expert concluded would be acceptable by an employer (id.; R. at 69).

34.     In Step Five analysis, implicit is Plaintiff's ability to perform work on a regular and continuing basis, without persistent absences (Docket No. 8, Pl. Memo. at 22-23).

35.     Defendant distinguishes many of the absences Plaintiff claims, arguing that they arose after her November 2013 automobile accident, almost three years before the relevant period.  She had massage appointments in November 2016 to November 2017 that were twice per week but did not interfere with her potential for working.  (Docket No. 11, Def. Memo. at 25.)

36.     Plaintiff concludes seeking remand for calculation of benefits (Docket No. 8, Pl. Memo. at 24).  With the evidentiary issues that are remanded here, however, the remand is for further proceeding and not to calculate damages.  Plaintiff needs to establish her disability before remanding to calculate damages.


IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 8) is GRANTED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 11) is DENIED.

FURTHER, that this case is REMANDED to the Commissioner of Social Security for further proceedings consistent with this decision.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.


Dated:      August 19, 2021
            Buffalo, New York


                                        s/William M. Skretny
                                        WILLIAM M. SKRETNY
                                        United States District Judge